[Civ. No. 15448.    Second Dist., Div. Three.    May 20, 1947.]

ROSALYN E. THOMPSON, as Executrix etc., Appellant, v. ANNA BELLE THOMPSON LEVEREAU, Respondent.

Rollin L. McNitt and Edythe Jacobs for Appellant.

James T. Boyle and McLaughlin & McGinley for Respondent.

SHINN, Acting P. J.—Rosalyn E. Thompson, as executrix of the estate of Louis William Thompson, deceased, brought this action against Anna Thompson Levereau for declaratory relief, calling for the construction of an agreement reading as follows:

"THIS AGREEMENT, made and entered into this 11th day of November, Nineteen Hundred and Thirty-eight (1938) in the City of Los Angeles, County of Los Angeles, State of California

"By and between BELLE THOMPSON LEVEREAU, of the City of Los Angeles, County of Los Angeles, State of California, Party of the First Part, and LOUIS W. THOMPSON, of the same place, Party of the Second Part,

"For and in consideration of Ten ($10.00) Dollars in hand paid each to the other, receipt of which is hereby acknowledged, and the further consideration of the covenants herein contained,

"The said parties hereto agree as follows, to-wit:

"That whereas the party of the first part is a copartner to the extent of a quarter interest in that certain business known and designated as the UNITED STATES BURGLAR ALARM Co., sometimes designated as the U. S. Burglar Alarm Co., located at 1315 West Pico Street, in the City of Los Angeles, County of Los Angeles, State of California, and whereas the said party of the first part is unable to devote any time or take any active part in the conduct or management of said business,

"Now, THEREFORE, the said party of the first part, and the party of the second part, covenant and agree as follows, to-wit:

"The said party of the second part agrees to act for and represent the said party of the first part in the conduct and management of said business so far as her interest therein requires, and pay to the said party of the first part from the earnings of her interest in said business during the period of her lifetime not less than One Hundred ($100.00) Dollars each and every month for the said period of her life.

"The said party of the first part agrees to accept the said sum of not less than One Hundred ($100.00) Dollars each and every month for the period of her life as hereinbefore provided, and in consideration therefor, upon her the first party's death the said quarter interest which she has in said business shall go to the said Louis W. Thompson, party of the second part, as his separate property, and in the event of his death prior to the death of the said party of the first part then upon the death of the said Belle Thompson Levereau, party of the first part, said quarter interest in said business shall pass to the Estate of Louis W. Thompson.

"IT IS FURTHER COVENANTED AND AGREED, between the parties hereto that in the event of the sale or other disposition of said business during the lifetime of said party of the first part, the parties hereto shall agree to a fixed sum to be paid to the party of the first part by the party of the second part, or his representative, such sum to be based upon a fair and reasonable proportion of the sale price received as her quarter interest bears to the price received for said business.

"This agreement shall be binding upon the heirs, executors, administrators and assigns of the parties hereto.

Belle Thompson Levereau<br>Party of the First Part

Louis W. Thompson

Witnesses:           Party of the Second Part
Fred J. Spring
Marie K. Thompson

"As a Copartner, I have no objection to this agreement.

Marie K. Thompson,

[Verification]          Copartner."

Defendant answered and filed a cross-complaint alleging facts upon which she sought to have the agreement declared

void and of no effect, upon the ground that it was without consideration and that her consent to it was obtained through the exercise of undue influence by Louis W. Thompson, who was her brother.

Upon a former trial the court gave judgment declaring the agreement to be an assignment of Mrs. Levereau's quarter interest in the partnership, subject to the payment to her by Louis W. Thompson of at least $100 per month from the earnings of said quarter interest. Mrs. Levereau appealed and this court reversed the judgment. (*Thompson* v. *Levereau,* 66 Cal.App.2d 795 [153 P.2d 206].) The action was retried before another judge and resulted in findings and judgment for the defendant; from that judgment plaintiff appeals. As conclusions of law the court found:

"1. On the appeal from the judgment rendered after the first trial in this action, the District Court of Appeal held that the instrument set forth under Paragraph III of these Findings of Fact was not a present assignment, and this constitutes the law of the case, but that court did not pass upon the question as to the validity of the said instrument.

"2. The instrument set forth under Paragraph III of these Findings of Fact is void.

"3. The instrument set forth under Paragraph III of these Findings of Fact is wholly lacking in consideration."

We shall consider first conclusion No. 1, but before doing so will state the theory of appellant with reference to the proper construction of the instrument and the effect that should be given to our former decision with relation thereto. The former opinion should be read in connection with the present one, and it is unnecessary to quote from it at any length. There is no uncertainty as to what was decided on the first appeal and no doubt that the point here involved was decided adversely to the present contentions of appellant. Plaintiff was contending, and the trial court had determined, that the agreement effected a transfer of defendant's interest in the partnership business to Louis W. Thompson. We held that the agreement could not be given that effect. Upon the second trial plaintiff conceded that our judgment was a final adjudication that no *present* transfer of interest took place, but contended that our opinion did not hold that the agreement did not effect a transfer of a future interest. She says that if the agreement did not effect a transfer of the entire interest, it amounted to a present

transfer, with reservation of a life interest in defendant, consisting of the right to receive from the earnings of her quarter interest not less than $100 per month, and that the question whether the agreement should be so construed was not presented to this court and was not decided on the former appeal. With this contention we cannot agree. We decided two questions, which were stated in the opinion as follows: "(1) Does the agreement of November 11, 1938, constitute a present assignment (i. e. an assignment as of that date) of defendant's quarter interest in the partnership; (2) do the circumstances surrounding the execution of the agreement and the subsequent conduct of the parties indicate an intent to make such an assignment? Both of these question; must be answered in the negative." In the course of that opinion, which was prepared by Mr. Justice pro tempore Fox, the several provisions of the agreement were carefully analyzed and were clearly shown to be inconsistent with an intention or an attempt to transfer defendant's interest in the partnership business. It was said in the opinion: "Whether we consider the agreement in its entirety or analyze it paragraph by paragraph, we are unable to find an intention expressed therein to make a present assignment of defendant's interest in the business to Louis," and the opinion went on to state that the agreement expressed only an agreement that Louis W. Thompson would look after and represent defendant's interest in the business, receive the earnings, as compensation for services rendered, which he had been receiving under a former direction from defendant, and pay to defendant from her share of the earnings not less than $100 per month. We thereby decided that no part of defendant's interest in the business was transferred to Louis W. Thompson by the agreement in question. To be sure, the opinion did not state that no interest "present or future" was thereby transferred, but that was not necessary to make our meaning clear. Consideration was given to plaintiff's contention that defendant had assigned her interest in the business, retaining only a qualified life estate therein, but our conclusion was to the contrary. Some importance seems to be attributed to the terms used in the opinion, "present assignment" and "presently assigned," but the reason for the use of these expressions appears in the statement in the opinion, "They were also attempting to cover the situation that would arise in the event of a sale of the business or upon the death of

the defendant.'' Plaintiff was not claiming and does not now claim validity for the agreement as a testamentary disposition of defendant's partnership interest. We held that title to the quarter interest remained in Mrs. Levereau, and by that was meant title to the entire interest, notwithstanding the provisions of the agreement with respect to the disposition of the profits accruing to that interest. With reference to the provision in the agreement for the disposition of the proceeds of a sale in the event the partnership should be sold, we held that the amount to be received by defendant was not to be limited to the value of her interest as of the date of the agreement, namely, November, 1938.

The trial court correctly construed the opinion on the former appeal as a determination that the November, 1938, agreement did not effect a transfer of all or any portion of defendant's quarter interest in the partnership business and therefore properly rejected plaintiff's contention that there was a transfer of said interest, with a reservation of a life interest therein.

Upon the first trial findings and conclusions were in favor of plaintiff upon defendant's cross-complaint, and it was accordingly found that the agreement was executed for a valuable consideration and was not induced by fraud or undue influence of Louis W. Thompson, and that he took no unfair advantage of defendant in the transaction. Inasmuch as a reversal of the judgment was required, the opinion on the former appeal dismissed the questions presented as to the correctness of the findings, conclusions and judgment upon the issues raised by the cross-complaint as unnecessary to be decided in a disposition of the appeal. Those issues therefore remained for decision on the second trial. Upon that trial the case was submitted upon the transcript of the evidence taken at the first trial, and that transcript is now before us.

The court found in favor of defendant and cross-complainant upon the cross-complaint, and decreed the agreement to be without consideration and void and of no effect. Plaintiff attacks the judgment insofar as it decrees invalidity of the agreement based upon want of consideration and the exercise of undue influence by Louis W. Thompson, contending, first, that the allegations of the cross-complaint were insufficient to state a cause of action for rescission, and, second, that the evidence was insufficient to establish failure of consideration or the exercise of undue influence.

■ We are of the opinion that the cross-complaint alleged sufficient facts to charge the exercise of undue influence by Louis W. Thompson. It was alleged that defendant reposed great trust and confidence in him, that he exerted pressure to induce her to sign the agreement, and that she received no consideration for entering into it. It was not alleged that she had ever attempted to disaffirm or rescind the agreement.

■ The evidence was sufficient to establish the confidential relationship and also that defendant signed the agreement reluctantly and only upon the insistence of her brother that she do so, and it was sufficient to justify the inference that her consent was obtained by the exercise of undue influence. We think it was not shown that the contract was without consideration, but the court would have been justified in finding that the consideration was grossly inadequate. Under these circumstances the burden was cast upon plaintiff to satisfy the court that the inference of the use of undue influence should not be drawn. This she could have done by evidence that Louis W. Thompson made to defendant a full disclosure of all material facts, that he did not abuse the trust and confidence which she reposed in him, that defendant's consent to the agreement was free and voluntary, and that the agreement as to her was equitable and just. The evidence was not such as to have required the trial court to determine the issue in favor of plaintiff, and the findings upon the cross-complaint should not be disturbed.

■ However, it is immaterial in the disposition of this appeal whether the agreement was subject to rescission upon the ground of the use of undue influence. Also immaterial is the conclusion of the trial court that the agreement is void. There are two reasons for this. The first is that defendant not only did not seek to disaffirm the agreement but, as we shall see, she ratified it. In the three and one-half years between the date of the agreement, November 11, 1938, and the date of Louis W. Thompson's death, May 20, 1942, large profits were earned by the partnership, namely, $12,000 in 1938, $19,000 in 1939, $18,000 in 1940, $25,000 in 1941, and in 1942, between January 1 and May 19, more than $11,000. There was no allegation or proof that defendant was under the influence of her brother during this period. She willingly allowed him to retain all the profits accruing to her interest in excess of the sums which he paid to and for her monthly. In fact, the same practice had been followed since the formation of the

partnership, April 13, 1937, in accordance with defendant's written instructions that her share of the profits should be paid to her brother. Defendant has never sought the recovery of any of these sums. She filed no claim for the same against his estate nor did she by her cross-complaint seek the recovery of any sums received by her brother under the agreement. She disclaims now any right to recover such sums from his estate. It does not appear that Louis W. Thompson ever asserted to plaintiff a claim that her quarter interest had been transferred to him. That claim was asserted by plaintiff as executrix, and defendant asserted the defense of the use of undue influence in resisting plaintiff's claim. The agreement constituted the basis for two claimed rights in favor of Louis W. Thompson and his estate, namely, that defendant's interest was transferred to her brother and, if it was not, that he had the right to retain as compensation for his services all profits received during his lifetime which had accrued to defendant's interest, in excess of the sums withdrawn by her to meet her needs. The first claim has been held groundless, and defendant concedes the validity of the second claim. If the agreement had been construed upon the former appeal, or should now be construed, as having the effect of transferring defendant's partnership interest to her brother, or if defendant had sought to establish invalidity of the agreement as a basis for the recovery of the sums which she had allowed her brother to collect and retain, a judgment upon the cross-complaint declaring the agreement to be invalid would have been of value to her. As it is, the adjudication that the agreement was void does not alter the rights or the claims of the parties in any respect. Defendant has expressly waived any claim to the sums so retained by her brother. She has ratified the agreement insofar as it gave him the right to retain those sums and has thereby ratified it completely because, as we have said, that was the entire agreement, except for certain provisions that are not in question here. The second reason for holding the decision on the cross-complaint to be immaterial is that if findings and judgment on the cross-complaint had been adverse to defendant, the judgment would have been the same, insofar as the real issues and controversies were concerned. To the extent that the judgment is based upon the cross-complaint, it awards defendant nothing which she would not have otherwise received.

Defendant's share of the profits since the death of her brother and to the time of trial amounted to more than $30,000, and the sums accruing to her share have been impounded, subject to disposition as directed by final judgment herein. Plaintiff's only claim to said earnings is based upon the alleged assignment of defendant's partnership interest to Louis W. Thompson.

The conclusions and judgment declare the contract to be void, from which we understand that the court considered it to be voidable. That would have been a proper conclusion of law from the facts found if defendant had accomplished a rescission of the agreement. There was no finding or conclusion as to whether defendant had affirmed and ratified the agreement, although there was a finding that she did not ratify it as a transfer of her interest. A further finding and an appropriate conclusion should be made to the effect that defendant at all times consented to the retention by Louis W. Thompson of the sums received and retained by him and has waived all right to recover the same, or any part thereof, from his estate.

The trial court is directed to make such finding and conclusion and to enter judgment that defendant is the owner of a quarter interest in the copartnership, United States Burglar Alarm Company or U. S. Burglar Alarm Company, that plaintiff or the estate of Louis W. Thompson, deceased, has no interest in or claim upon said quarter interest, and that plaintiff, or said estate, has no right to receive all or any of the profits accruing to defendant's quarter interest since the death of Louis W. Thompson, May 20, 1942, but that defendant is entitled to receive and have paid over to her such profits as have accrued since that date and those that may accrue to her said quarter interest, and that defendant recover her costs of suit.

As so modified the judgment is affirmed.

Wood, J., and Kincaid, J. pro tem., concurred.